May it please the court, I'm Kirby Heller for the government. The sole issue in this case is whether the district court was required to hold a de novo evidentiary hearing before rejecting the magistrate judge's credibility finding that the affidavit in the search warrant was telling the truth when he said that he smelled marijuana. It wasn't only telling the truth, it was whether he was reckless or intentional in not telling the truth. That's correct your honor. That's Franks. That is Franks. It's a Franks hearing and where credibility of course is key and the magistrate judge stated it both ways. At one point the magistrate judge did conclude in making his final legal determination that Trooper Young was truthful. Then he also of course stated the legal standard as your honor did. And Judge Sedgwick's determination necessarily finds that Young intentionally lied. That's correct or was reckless but I believe he said it intentionally. It's hard for me to imagine being reckless about a report of what I smelled. I agree your honor. I agree. I think this comes to was he intentionally not telling the truth or was he telling the truth? And the district court. In Spain we say let's call bread, bread and wine, wine. This is lying. That's absolutely the case your honor and it's ultimately a credibility determination which is what most Franks hearings are about. In this case the district court relied on this court's cases to say that a de novo evidentiary hearing is only required when a defendant's due process rights are at stake. And we believe that the district court both misconstrued this precedent and really ignored the purpose of the rule itself under this court's cases. And there are two fundamental problems we see with the court's reasoning. The first is that by focusing on although a defendant has a due process right to a hearing, the court ignored another major constitutional question underlying the hearing and that is did the government violate the defendant's Fourth Amendment rights. That's a question of course that's critical to both parties and what this court said in its first case on this issue, Bergera, was that we need a process that will determine the answer to this question that is most reliable, that's most accurate, that guarantees the integrity of the process. It was concerned with the process itself. It's not concerned with the process that benefits the defendant. The defendant doesn't have a due process right to a favorable result ruling. It's not a process that benefits the government. It's a process that benefits the truth-seeking function and that belongs to both sides. I was trying to think of an analogy to the court's ruling and it seems to me it would be equivalent to a ruling that the defendant, of course, could cross-examine the government's witnesses at a hearing or at a trial because, again, that is the mechanism, the engine that's most likely to lead to the truth coming out, but that the government wouldn't have the same right because it's based on the confrontation clause and, of course, we don't have that because, again, we're interested in this process that's going to bring out the most accurate result. The second flaw, we believe, in the government in the district court's ruling, and it's related to the first, is that it overemphasized the fact-driven holdings in these specific cases, Bergera and then Ridgway, and didn't think about the rule underlying it. So, of course, the holdings in both of those cases, because they were brought by defendants, is that the district court was required to have a hearing if it was rejecting a magistrate judge's ruling recommending suppression. That's the fact-driven holding, but the ruling is much more general, and when you look at this court's cases, they talk about the rule in very general terms that don't distinguish between the parties, but, again, talk about the need for a hearing that will most likely lead to an accurate result. And one other factor, I think, that supports the view that this rule applies to both sides is that when courts, both in this circuit and other circuits, have looked at this case, they don't really distinguish between precedent in which the government is the appellant and precedent in which the defendant is the appellant. They use these interchangeably, again, to support the rule. Well, I have a problem, and perhaps you can help me. Under 28 U.S.C. 636 v. 1, which governs magistrates and district courts, the last sentence in that paragraph says that the district court may hold an evidentiary hearing or remit to the magistrate for further hearings with instructions. Well, that sounds to me like it's permissive, not mandatory. What you're arguing for is a mandatory, symmetrical rule, which is when the magistrate's credibility-based finding is departed from by a reversal by the district court. Whether it's the defendant who is a loser by the district court or whether it's the government who is a loser in the district court, a second hearing is required. How do we square what's the source of your asserted rule and how does it affect the textual language of 636 v. 1, which makes it soundingly discretionary? Your Honor, this Court actually dealt with that issue in Ridgeway. Certainly the rule makes it sound discretionary, and that was discussed at length in Raddatz, the Supreme Court case, which was looking at when the district court accepts the magistrate judge's ruling. We believe sort of the bottom line is that it would come from the supervisory authority of this Court to establish procedures that, again, are necessary for fairness. Another reason and importance of the Court exercising its supervisory authority here is that this Court's review of rulings from a Franks hearing are under the clearly erroneous standard. That really doesn't make sense when it's reviewing the findings of a fact finder who, in fact, didn't see the evidence and hear the evidence and participate in the hearing. And so it also enables this Court's function as a reviewing court to require another hearing so that it can then properly defer to the fact finder as it's required to do. Counsel, if I could interject a question, please. I suppose we definitely have the power in our supervisory authority to make a rule that whenever a district court flips a magistrate judge's fact finding, that's like prohibited absent a hearing. So we could do that. But whether the Supreme Court would like such a broad rule, I'm not sure. So my question to you is, you know, why does the government have to argue for such a broad rule here? Couldn't you urge a narrower theory that just it's an abuse of discretion in the facts of this case or maybe some other cases to reverse a credibility finding without an evidentiary hearing based on certain features of the case before us? I mean, why does the government urge such a broad rule? The reason, Your Honor, is we are really following what this Court said in Ridgeway where, again, the government at that point argued that even if this Court were to have some kind of rule, there could be exceptions. Right, but Ridgeway, of course, does involve due process of an individual. So we're on a different planet here with the government appealing. Well, I guess I don't believe that we are, Your Honor, because I guess it all still comes down to the ultimate question of how are we going to have the most accurate finding. Now, clearly here, even if this Court were to have a narrower rule, we believe that it would fall into it. The district court, for example, said – Articulate a narrower rule following Judge Ridge. Well, a narrower rule could be the rule that some of the concurring and dissenting justices in Raddatz suggested, for example, or that I guess some of – In the facts of this case. In the facts of this case, the narrower rule could be when credibility is the major issue, is the determinative issue, the court must have a hearing, as opposed to when credibility might not be the determinative hearing. Do you have any authority for that rule, or is it just custom made? Well, basing it on, again, what some of the concurring justices said in Raddatz and I believe what the 11th Circuit has – or the 5th Circuit. I forgot if it's before the split or not. I think it's before the split, so it would be the 5th Circuit in Marshall. Now, I haven't found any cases in which the court applied that narrower rule, but – Counsel, doesn't that create the possibility that if either side thinks that the credibility of a witness may be at issue, that a district court is going to have to duplicate a lot of hearings here? The statute that Judge Bay alluded to, referred to, I'm sorry, 636, says may, but it doesn't really discuss the circumstances. And so it contemplates that it may not be necessary to hold a hearing if, for example, it's simply a ruling of law. There's some kind of other principle at issue. But since it's very difficult, maybe difficult in advance to determine when the credibility of a witness is going to be determinative, then doesn't that suggest that district courts are going to have to duplicate all the Franks hearings? If they're going to reject that credibility finding. Well, I mean, this suggests that the district court will look at the papers and decide that if he's coming out the other way, then he's going to have to hold the hearing. Is that right? I'm a little concerned here about the judicial efficiency of the whole thing as well, and that we just may end up holding a lot of duplicative hearings any time if a party says credibility is at issue. Your Honor, I just want to answer your question. I just forgot to note that I did want to save time for rebuttal, but let me answer your question first. I see my time is winding down quicker than I thought. As to duplicative hearings, the fact is that this doesn't really come up very often. So I've only found the Coffield case from the 11th Circuit. There's some unpublished cases. And then this case where the district court has rejected a magistrate judge's finding recommending that the motion be denied. So it's not a situation that's going to come up a lot. But in the cases that it does come up, I do believe that it is critical, for the reasons stated in this Court's cases, whether it's framed in due process or not, that the district court hold another hearing. If I may, I'd like to reserve the three minutes in rebuttal. Thank you. That's fine. Okay, we will proceed to appellees. Please. Good morning. I'll be taking nine minutes and reserving six minutes for my colleague. This Court should affirm Senior Judge Sedgwick's decision because he made the decision based upon existing law. No case in this jurisdiction, the 9th Circuit, has ever held that a district judge must hold a de novo hearing when that judge is reversing or rejecting recommendations that are favorable to the government. Bergara did not hold that. Ridgway did not hold that. The U.S. Supreme Court and RADx didn't hold that. The Magistrate Act is simply contrary to that position. Senior Judge Sedgwick was correct in his ruling. I submit that Congress Mr. Dozier, didn't Senior Judge Sedgwick, in effect, say Young had perjured himself without ever seeing Young, without ever seeing his demeanor, without ever seeing anything about him? He did, Your Honor, and it wouldn't have been an abuse of discretion to so hold him, given the facts of this case. The evidence was just simply so overwhelming that it would have been an abuse of discretion to find that he had not perjured himself. And that's based on a cold reading of the transcript or based on what you know from having been present at the hearing? The district judge explained that he had reviewed the entire record. I reviewed the entire record last night. I'm interested in how I was supposed to know after reading that record that the evidence was overwhelming that Detective Young lied. Your Honor, the evidence is overwhelming because Trooper Young's testimony stands alone. The government presented essentially three witnesses, two troopers in addition to Trooper Young. One trooper who participated in the search stated that he previously had been able to smell marijuana in other cases. Nobody was there that night except for Young. I mean, the whole question turns out, did Young smell it on that night or not? It doesn't matter whether somebody could smell it two weeks later or the next day or whether somebody thought and came by and said, I've got a great nose and I can't smell it at all. All of that's irrelevant. The question is, did Young smell it on that night under those circumstances? Yes, Your Honor, that is the question, and the answer to that question can be gleaned. Of course, nobody else was there except for Trooper Young. The instruction we've heard over and over again in trials, one witness worthy of belief can establish any facts for the jury, right? So the fact that only Young testified or defied is not determinative, is it? It is not determinative, Your Honor. However, it is highly indicative given the fact that other evidence more than suggests almost compels the finding that that particular witness. What's the evidence that you think compels it? Because when I went through the briefs, I was bothered by the fact the judge could say the officer is lying without looking at him. I just wondered if a lot of the testimony couldn't be reconciled if there had been some unusual atmospheric or weather condition or if the filter system was temporarily on the blink, which of course we don't know, right, because it was destroyed. So you don't know if it malfunctioned that night. So what's the other evidence that just clearly shows that the police officer was lying? Your Honor, there's very good evidence that the system did not malfunction. And that evidence was submitted by the government itself. The trooper Young testified that when he went there, he found that there were two brand-new systems that were two brand-new filters ready to be used as replacement filters. Which he testified could indicate that the other filters were full or that something was wrong with them because you had two filters standing by ready to be installed. Your Honor, there was evidence that the defendant bought two filters per week and that he regularly replaced them. That's the evidence from Mr. Toms. That is the evidence from Mr. Toms. Right. And Mr. Toms, how do I know, sitting here, I read Mr. Toms. Now, am I supposed to just accept Mr. Toms as utterly credible? You don't look at the cold record and say the officer's obviously lying? You need not look at Mr. Toms as totally credible. However, the important parts of his testimony was corroborated and it was corroborated by the— Well, there's no question he had a good filter system. I mean, he gave a great deal of detail. Very impressive. The officers found the filter system, so he certainly was not lying about the fact that he had a filter system. Still doesn't tell us whether the filter system was on or off that night. The problem, as I see it, is the filter system could be saturated at some point. I thought that was the testimony. So temporarily it might not work perfectly. Your Honor, if the filter system became saturated, then I think that the evidence indicates that it would not have been working. However, the evidence is that it was working less than 13 hours after the Trooper Young purported to have smelled the strong odor of marijuana. And the only way to reconcile an unworking system with the fact that it obviously was working 12 hours later when one of the Troopers had to step inside the grill room in order to smell marijuana is to posit that Young somehow in that morning dismantled his system, went out and bought two more, and then hid or discarded the other 150-pound filter. You mean Toms? Trooper Toms, I'm sorry, Your Honor. Your Honor, for the reasons stated, we believe that United States Code 28 U.S.C.B.1 establishes the standard that should be applied by this Court. This Court has noted that in Ridgeway that nothing in, or that Bagheera and Raddatz and the Magistrate Act, nothing in either the Magistrate's Act or the Raddatz interferes or undermines its decision. And this decision was the defendant is entitled to the assurance that important factual conclusions will be drawn from the testimony. And finally, in Ridgeway, this Court states that particular holding is not undercut by Raddatz or amendments to the Federal Magistrate's Act. I'd like to ask you a question. Yes, sir. If the right to have a second hearing, let's call it, is the defendant's and the defendant's only because he has some sort of due process rights, let's concentrate on the content of the due process right, singular, which gives him the right to have that second hearing. What is that right? It's not the right to confrontation because he has that in the Sixth Amendment. It's not the right to a jury trial. He has that in the Seventh Amendment. What is the right that gives your client, Toms, but not the government, a right to a second hearing? Your Honor, I believe that the particular due process right involved is the right to have important factual determinations be made by a person who has actually witnessed the testimony. Isn't that exactly the same right that the government is urging that it has? That is exactly the same right, but the government is not. The government doesn't have that right because it is not a person and therefore doesn't have that right. Doesn't everybody have the right, regardless whether it's due process or not,  Your Honor, I submit that the right has to be grounded on statute or an existing rule. It doesn't in the Eleventh Circuit under Coffield. It doesn't in the Second Circuit under Carrion. Your Honor, I submit that Coffield was wrongfully decided. Coffield was based on, essentially it was based on footnote number seven of Raddix, and Raddix, that footnote appeared in the section discussing due process and obviously pertained to due process. Not a word of due process as the basis in Coffield, not a word of due process as the basis for the result and the writing by Judge Katzmann in Carrion. It's all about supervisory duties of the courts to make sure we get accurate findings. Pardon me, you only have four minutes. You want to give it to me? I'm going to add a couple of several minutes to your time. Thank you, Your Honor. Counsel gets the full six minutes to cover what he wanted to cover, but we've also peppered you with a lot of questions. So if you have something further to say for another minute in response to anything that Judge Bobbie or Judge Bayer or I asked you, go ahead. Your Honor, I want to thank you for granting some additional time to my colleague, and I believe that my colleague, Mr. Chobo, will be able to address anything that I've forgotten. And thank you, Your Honor. Thank you, and thanks for making the trip from Alaska for us. It was my pleasure. Mr. Court, judicial economy is an important and driving issue here as well, as other constituents of due process. The government has virtually inexhaustible resources. They had to crack at this at the evidentiary hearing. They produced no expert. They produced two witnesses who ultimately Judge Sedgwick found to be defense witnesses. One witness testified that he only smelled the marijuana once he entered the building. The other witness said he only smelled marijuana within 50 feet of the building. The government now seeks to have another evidentiary hearing,  but also, importantly, the defendant's ability to allocate his resources. The defendant spends considerable money to obtain a witness, produce a solid hearing before the magistrate judge, and now the government seeks to have the defendant, who is incarcerated, who has difficulty at the time he's not incarcerated now, but at the time he's incarcerated, who has difficulty marshaling the resources to fight a second fight. Indeed, this is possibly, in itself, a violation of the defendant's due process right. Your Honor asked whether why is it that. I don't understand your last point. What's a due process violation? Well, I think in the due process, the three-pronged test of due process, one of the considerations is resources and exhaustion of resources, and I think in this instance what we're talking about is submitting the defendant through. All right, but we have no record about his resources or whether this would be some unconstitutional. Are you arguing that if we determine in our supervisory power that the district court judge should not overrule a magistrate judge finding and say that a law enforcement officer was lying, that to require a hearing on that would offend due process? I'm saying that it raises the question, Your Honor. I'm not here to argue that as a singular point. I'm saying it simply raises the specter of that issue. Okay, well, what I'd suggest is, I mean, you could argue whatever you want, but it's going to be more helpful, I think, if you can focus on the particular questions that different judges had posed. Where I was going with that, Your Honor, is that the question was raised as to what is the due process violation that was found earlier. I would submit that what that is is that the Federal Magistrates Act, the reason why the magistrate judge hears these evidentiary hearings in lieu of the district court judge, is an economy of resources. And yet the district court judge is the judge assigned to the matter. The district court judge is the final judge of the issue, and the defendant has a right to have a full, fair hearing before that district court judge. In the instance where the magistrate judge has ruled against him or where the magistrate judge has ruled for him, and the district court judge has reversed that decision. So a judicial economy is out the window if the defendant has lost before the magistrate judge but is invoked if the defendant wins before the magistrate judge. I would submit that that is the reality. Furthermore, I would add in that in this case we talked about the overwhelming evidence. It is not simply in the previous cases in Ridgeway, in Raddatz, you had in Bagheera there was no warrants. There were no search warrants in that case. In Ridgeway you had the assertions of an officer alone. There was no other testimony as to expert testimony. There was no scientific evidence, these type of things. It's simply a straightforward credibility determination where the magistrate judge hears only from whether the officer is telling the truth or not. Excuse me. Kathy, could you add three minutes to Mr. Chabot's time? Make sure the clock doesn't make him feel he's got to stop talking. In this instance we have numerous evidence. With regards to the filters, for example, there were photographs of the other filtration systems, brand-new filtration systems sitting ready to be reloaded to replace the other filtrations, the filtration system that was removed. And indeed, that filtration system that was removed could never have been tested because officers destroyed it on removal. Secondly, there was a photo that Mr. Thompson testified that he regularly smelled the output out of his vents every day, and he had a ladder to do that. There was a ladder to corroborate his testimony. The expert testified as to the ability, not just simply weather conditions, but the ability of smell to travel over distances, the ability of the human being to… As I read Professor Doty's testimony, he said that he was assuming that the filters worked correctly. But I don't think that the government even asked him. I don't think that anybody else asked him. What if the filters weren't working? Is there any chance that he could have smelled it? I was really surprised by the certitude of Dr. Doty's answers, too, for a scientist to answer twice that there is zero chance that anybody smelled it. It struck me as unusual that a scientist would say there is zero chance of that. I can understand a scientist who says it seems very unlikely under these circumstances or seems nearly impossible, but that kind of certitude struck me as sort of beyond what responsible scientists will usually say. Indeed, I think that Mr. Doty, who is known as an expert in the field of smell, who is running a center at the University of Pennsylvania related to… Expert credentials are not to be questioned. I would submit that his certitude is reflective of the facts as he saw them. It's also unusual, though, that the certitude was based on certain assumptions that may or may not be true. Whether the question as to the filtration system was working at that time, indeed, we can never know, but we also can never know because of the government's… Right, but we don't even have, again, nobody posed to Professor Doty the question, what happens if the filtration system is not working and if Mr. Toms is venting his system late at night trying to avoid detection but has to vent the system? Indeed, that's the case. The question wasn't posed. Right. I would just add that… Which means, then, that it might be really important to see Officer Young and to see him questioned under you and Mr. Dozier's withering questions to see how certain he is, to ask him about the times that he's admitted that he was wrong on this, that he or other officers were incorrect. He put that in his warrant. Question him as to how many times they were correct, how far away they were when they detected marijuana previously. Your Honor, those questions, the question is the filtration does not stand. The filtration, it is a relevant, important, obviously critical question, but it's much many other critical factors of evidence, including the distance, the topography, the weather conditions, the ability of the human nose to simply smell things as well. That was directly relevant to Mr. Doty's testimony. It stands not alone. This isn't simply a situation where the magistrate judge looks the officer in the eye and has to determine whether he's telling the truth, simply on the manner and demeanor in which he tells the truth. But it could be relevant to the good faith exception, which the district judge also found against him. Yes, Your Honor. And that suggests, then, as Judge Bea pointed out, that Judge Segwick's conclusion is that Officer Young is lying. Well, go back to that. There's also an issue of recklessness here as well. I would submit that. How can you recklessly smell? Well, the question is whether you're reckless in your statements. Whether, in other words, you know, if the- Do you know there's a risk that you didn't smell and you state that you did smell? Is that recklessness or is it intentional lying? Well, I think the question is whether the search warrant was obtained recklessly by simply putting in statements that, you know, he- No, it has to be recklessness in stating the fact. Smell. It's a fine line. The words are all put together, reckless, knowing, intentional. And I think, ultimately, it's a blurry line. I mean, whether- We're not going to the morality of or the righteousness of Trooper Young's- Well, it may go to that. It may go to that question. If I were the chief of police or the head of the troopers in Alaska and I have the result of a Franks hearing and a finding by a federal district judge that one of my officers is lying in a warrant, that may trigger internal investigation. I mean, I think there are some consequences here. And the implications of saying the officer is lying are actually quite serious. And because the district judge has said, not only do I think that he was wrong that he smelled this, but he must be lying and, therefore, there's no good faith exception, but has never seen the officer testify, has never looked him in the eye or heard what he said, listened to his voice inflection, or listened to anybody else. It seems pretty difficult. I think the good faith exception would be much more at play had there been any evidence of any possibility that he smelled marijuana from any other source or any other- Of course, in the warrant, the warrant didn't just depend on the smell. The smell is what triggered further investigation. Then he found the electrical records. Indeed. He did have corroboration. He did the responsible thing, went out and looked for additional corroboration before he went to the judge. Indeed. And as to that corroboration, we challenged some of those aspects as well. The Toms were involved in a business, a snow plowing business, and they had a lot of electrical usage. It was a very large property, multiple buildings, multiple- Right, but probable cause is just a fair probability. It doesn't have to be certainty. So, in a sense, it doesn't really matter if they might have had legitimate uses for electricity. Once he got that, you know, he's got probable cause. If there wasn't a lying or reckless statement in his affidavit that let him go forward. I would concede that point, Your Honor. Without the smell assertion, the warrant would have failed. Let me ask this. Are you aware of any reported case from another circuit or from a published district court case where a court in a Franks hearing has overruled a magistrate's fact-finding and said that a law enforcement affiant was lying? In other words, do we have any precedent where that's occurred? I don't think we have that precedent. I think we have precedent where the magistrate judge had found the law enforcement officer lying. However, the district court judge found him to have been telling the truth. Okay. I would just finally add that there is the-well, I've got a couple minutes. Actually, the clock is red and it's going up. You're three minutes over my extended time, but we'll give you another half minute to wrap up. The underlying statute here contemplates that the district court judge may accept, reject, or modify the findings of the district court judge. Now, to make that modify, this gives broad discussion to the district court judge. And to modify would implicitly mean that he would accept certain aspects of the magistrate judge's findings and reject others. And I think this implies that necessarily a new evidentiary hearing shouldn't be held. It's not as clean-cut as an accept or reject. There is that gray area, and that gray area gives broad discussion to the district court judge. Here, the district court judge felt that the magistrate judge had improperly reviewed the evidence, had abused his discretion, and the district court judge properly found for the defendant. Thank you, Mr. Tribble. Now, the government, we're giving you a rebuttal now. I guess I've been maybe an overly permissive presiding judge extending time. So if you need an extra minute, we'll give you that too. This is a very important case for the circuit and for district court judges, so say whatever you want to say, but we'll give you an extra minute. Thank you, Your Honor. I don't believe I have too much to add to what's been said before. Going back to the issue of duplicate hearings and judicial resources, for the reasons I stated before, I don't believe this has come up all that often, it will come up all that often, so I don't believe there is going to be a case of a great waste of judicial resources. But in the instances when it does, I do believe that the same rules, for the reasons I said, the same rules that apply to the defendants under the rubric of due process should apply, and that is when there's a credibility finding that the district court has to make that should be based on live testimony and presiding at a hearing. If there is to be a rare exception, certainly if it's a legal finding, that's a different issue. We're talking about factual findings as to credibility. If there is to be a rare case, it would have to, it would certainly, this case would not fall under it. One could perhaps imagine some documentary evidence in the record that irrefutably establishes a certain point. Well, if it were indisputable that Judge, that Officer Young had no sense of smell at all, indisputed, that would be different. That could perhaps be it. If there's some law physics, some scientific law that there are no exceptions to, that could be a case. This is clearly not that. I think the district court was relying perhaps most heavily on Professor Doty's expertise, but for all the reasons that have been brought out, we don't believe that's irrefutable. And he easily could have been wrong for any number of reasons. He could have been wrong because he relied heavily on Tom's, who might not have been telling the truth. He could have been wrong because he didn't take into account all the factors that one should take into account. One thing that struck me in reading the testimony, again, is at one point Professor Doty said something about, they're either budding plants or non-budding plants, and that's all I have to look at. And he really never talked about, in forming his opinion, not only the number of budding versus the number of budding plants, but there are factors that Young mentioned in his search warrant about the health of the plants, the number of leaves, how close they were to harvesting, the density of the plants. Professor Doty didn't talk about how thick the opening was from which the air, the fumes were coming. Was it trickling out? Was it coming out in a big blob? He is not an air movement expert. He's not a climatologist, a meteorologist, a botanist, all of which would affect perhaps whether Young could smell the marijuana or not. How do you respond to Mr. Jobel's argument that the government kind of under-presented in terms of the experts or didn't bring experts to the hearing? If the government, if he's arguing the government just didn't adequately present its case, should they get another bite at the app? Well, obviously the magistrate found in the government's favor, so at the time it seemed that the government had put on an adequate case. If we were here contesting the substance of the finding, whether the findings were clearly erroneous, we would be in a difficult position. And if on this record the district court, after seeing all the witnesses testify, ruled the same way, I don't believe we'd be back before this court saying it was clearly erroneous. It's really the legal principle that's at stake. And once the magistrate judge ruled in the government's favor after seeing these witnesses, obviously not putting a great weight on Doty's opinion, finding Young truthful, you know, we can't say at this point that we under-presented our case. We prevailed before the fact finder at the time. Now that we know what the district court's concerns are, if we were to go back and have a hearing, we obviously would try to address some of those concerns. Okay, thank you. There are no questions. Any other questions? Hearing none, I want to thank counsel from Anchorage for traveling so far and making such excellent arguments, and counsel from Washington, D.C., ditto. So thank you all. Very nice argument.
judges: Gould, Bybee, Bea